IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ROBERTA HALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No.: 2:19-cv-289 |
| ABSOLUTE HOUSE CARE, INC.; | ) |
| ELITE MARKETING SERVICES, INC., | ) |
| d/b/a ELITE PLUMBING SERVICES, INC.; | ) |
| AQUA FINANCE, INC.; | ) |
| and CONNEXUS CREDIT UNION; | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

1.  Plaintiff, an elderly resident of Illinois, brings this action against defendants Absolute House Care, Inc., Elite Marketing Services, Inc., d/b/a Elite Plumbing Services Inc., Aqua Finance, Inc. ("Aqua"), and Connexus Credit Union to recover damages for a predatory course of conduct involving the sale and financing of a useless water softener to plaintiff. Plaintiff alleges violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq., and Illinois law.

**JURISDICTION AND VENUE**

2.  This Court has subject matter jurisdiction under 15 U.S.C. §1640, 28 U.S.C. §1331, 28 U.S.C. §1332, 28 U.S.C. §1337, and 28 U.S.C. §1367.

3.  As set forth below, the parties are of diverse citizenship. The amount in controversy exceeds $75,000, exclusive of interest and costs.

4.  Venue in this District is proper because defendants Absolute House Care, Inc. and Elite Marketing Services, Inc., d/b/a Elite Plumbing Services, Inc., are located in Terre Haute,

Indiana, and the other defendants contracted with Absolute House Care, Inc., to engage in the course of conduct giving rise to the violations complained of, knowing that such conduct would be carried out from Terre Haute, Indiana.  Defendant Aqua Finance, Inc., supplied Absolute House Care, Inc., with improper form documents used to carry out the violation, and defendant Connexus contracted with Aqua Finance, Inc., to have Aqua generate business for it.

5. Personal jurisdiction is proper for the same reason.  Indiana Rule of Trial Procedure 4.4.

**PARTIES**

6. Plaintiff Roberta Hall is 80 year old individual who resides in a home which she owns in Georgetown, Illinois.  She is a citizen of Illinois.

7. Defendant Absolute House Care, Inc. is an Indiana corporation with its principal place of business at 1719 Wabash Ave., Terre Haute, IN  47807.  It is engaged in the business of selling water treatment equipment and other goods and services.  Its principal officer is Amanda B. D'Amico.  It is a citizen of Indiana.

8. Defendant Elite Marketing Services, Inc., d/b/a Elite Plumbing Services Inc., is an Indiana corporation with offices at 1719 Wabash Avenue, Terre Haute, IN  47807.  Its principal officer is also Amanda B. D'Amico.  It is a citizen of Indiana.

9. Defendant Aqua Finance, Inc. ("Aqua"), is a Wisconsin corporation with offices at 1 Corporate Dr., Suite 300, Wausau, WI, 54401-0844.  It does business in Indiana.  Is registered agent and office is Corporation Service Co., 135 N. Pennsylvania Ave., Suite 1610, Indianapolis, IN  46204.  It is a citizen of Wisconsin.

10. Defendant Connexus Credit Union is a corporation domiciled in Wisconsin with

offices at 1 Corporate Drive, Suite 700, Wausau, WI 54401.  It is a citizen of Wisconsin.

## FACTS

11. On Saturday, November 3, 2018, a salesman representing Absolute House Care, Inc., David W. Poe, visited plaintiff at her home and, after a high-pressure sales presentation lasting over 2 hours, convinced her to buy a water softener for $9200 plus $644 sales tax.

12. At no time did plaintiff visit the business premises of Absolute House Care, Inc.

13. The Hague Watermax water softener is intended for handling a large volume of water.

14. Plaintiff lives alone and does not use a high volume of water.

15. The Absolute House Care, Inc., salesman was aware that plaintiff lived alone and did not use a high volume of water.

16. The Absolute House Care, Inc., salesman failed to disclose to plaintiff the material fact that the Hague Watermax water softener is intended for handling a large volume of water and was therefore not suitable for plaintiff.

17. Representatives of Elite Marketing Services, Inc., installed the water softener the next day, Sunday, November 4, 2018.

18. In connection with this transaction, plaintiff received or signed the following documents:

    a. Credit Application on a form issued by Aqua Finance, Inc. (Exhibit A)

    b. Bill of Sale Receipt (Exhibit B);

    c. Retail Installment Credit Agreement (Exhibit C);

    d. Information Sheet (Exhibit D)

   e. Certificate of Completion (Exhibit E).

   f. Limited Installation Warranty (Exhibit F);

19. Each of these documents is a form document.

20. Exhibit A, a form prepared by Aqua, purports to provide that plaintiff is applying for a "revolving credit account," a form of what the Truth in Lending Act and Regulation Z describe as "open-end credit." It was filled out to show that plaintiff was a senior citizen on a fixed income.

21. Exhibit B confusingly describes the nature of the credit arrangement as follows: "On closed-end credit plan financed sales, upon credit approval the Balance Due will be transferred to a Retail Sale Installment Contract or revolving Credit Card program; if credit approval is denied, Buyer remains obligated to pay the entire Balance Due to Seller."

22. Exhibit C purports to be between Absolute House Care, Inc., as the creditor, and the consumer, and provides that it is assigned to Aqua.

23. An open-end or revolving credit arrangement is only proper if "The creditor reasonably contemplates repeated transactions," 12 C.F.R. §1026.2(a)(20)(i).

24. Implementing regulations provide (Official Interpretations, 12 C.F.R. Part 1026, Supp. I, ¶2(a)(20)):

> 3. Repeated transactions. Under this criterion, the creditor must reasonably contemplate repeated transactions. This means that the credit plan must be usable from time to time and the creditor must legitimately expect that there will be repeat business rather than a one-time credit extension. . . . The determination of whether a creditor can reasonably contemplate repeated transactions requires an objective analysis. Information that much of the creditor's customer base with accounts under the plan make repeated transactions over some period of time is relevant to the determination, particularly when the plan is opened primarily for the financing of infrequently purchased products or services. A standard based on reasonable belief by a creditor necessarily includes some margin for

judgmental error. The fact that particular consumers do not return for further credit extensions does not prevent a plan from having been properly characterized as open-end. For example, if much of the customer base of a clothing store makes repeat purchases, the fact that some consumers use the plan only once would not affect the characterization of the store's plan as open-end credit. The criterion regarding repeated transactions is a question of fact to be decided in the context of the creditor's type of business and the creditor's relationship with its customers. For example, it would be more reasonable for a bank or depository institution to contemplate repeated transactions with a customer than for a seller of aluminum siding to make the same assumption about its customers.

25. Otherwise, the creditor must provide the more comprehensive closed-end credit disclosures. These include disclosure of the "finance charge" as a dollar amount, as well as the total sale price. 15 U.S.C. 1638.

26. The creditor in this case is Absolute House Care, Inc.

27. Absolute House Care, Inc., did not have a reasonable basis for believing that plaintiff intended to engage in repeated transactions with it.

28. Exhibit D purports to impose a cancellation fee if equipment is installed within three business days and the transaction is cancelled.

29. On November 13, 2018, Aqua sent plaintiff the letter attached as Exhibit G, stating that her "loan" had been sold to Connexus Credit Union and that she was now a member of Connexus Credit Union. Plaintiff had not applied for any such membership. The letter stated that Aqua would continue to service the loan.

30. By authorizing Aqua to originate and service business for it, Connexus entered into a principal-agent relationship with Aqua.

31. Also on November 13, 2018, Connexus sent plaintiff the letter attached as Exhibit H.

32. Plaintiff's "loan" was in fact sold to Connexus.

33. Aqua "for the benefit of Connexus" sent plaintiff billing statements, such as those attached as Exhibits I-J  This was the first time plaintiff received information about the likely dollar cost of the credit.

34. Aqua has previously been sued for improper financing of water softeners using open-end credit (Exhibit K).  Connexus knew or should have known that Aqua engaged in such conduct.

35. The transaction between Absolute House Care, Inc., and plaintiff was subject to the cancellation rights provided by 815 ILCS 505/2B, which provides:

> § 2B. Where a sale of merchandise involving $25 or more is made or contracted to be made whether under a single contract or under multiple contracts, to a consumer by a seller who is physically present at the consumer's residence, that consumer may avoid the contract or transaction by notifying the seller within 3 full business days following that day on which the contract was signed or the sale was made and by returning to the person, in its original condition, any merchandise delivered to the consumer under the contract or sale. At the time the transaction is made or the contract signed, the person shall furnish the consumer with a fully completed receipt or contract pertaining to the transaction, in substantially the same language as that principally used in the oral presentation to the consumer, containing a "Notice of Cancellation" informing the consumer that he may cancel the transaction at any time within 3 days and showing the date of the transaction with the name and address of the person, and in immediate proximity to the space reserved in the contract for the consumer's signature or on the front page of the receipt if a contract is not used, a statement which shall be in bold face type, in at least 10-point type and in substantially the following form:
>
>> "YOU, THE CONSUMER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT."
>
> Attached to the receipt or contract shall be a completed form in duplicate, captioned "NOTICE OF CANCELLATION" which shall be easily detachable and which shall contain in 10 point bold face type the following information and statements in the same language as that used in the contract:
>
>> NOTICE OF CANCELLATION

(enter date of transaction)
..........
(Date)

YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN 3 BUSINESS DAYS FROM THE ABOVE DATE.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU UNDER THE CONTRACT OR TRANSACTION WILL BE RETURNED WITHIN 10 BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE SELLER AT YOUR RESIDENCE IN SUBSTANTIALLY AS GOOD A CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR TRANSACTION, OR YOU MAY IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE SELLER REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE SELLER'S EXPENSE AND RISK.

IF YOU MAKE THE GOODS AVAILABLE TO THE SELLER AND THE SELLER DOES NOT PICK THEM UP WITHIN 20 DAYS OF THE DATE OF YOUR NOTICE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO THE SELLER, OR IF YOU AGREE TO RETURN THE GOODS TO THE SELLER AND FAIL TO DO SO, THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE, OR SEND A TELEGRAM, TO (Name of seller), AT (address of seller's place of business) NOT LATER THAN MIDNIGHT OF (date).

I HEREBY CANCEL THIS TRANSACTION.
 Date) ..........
..........
(Buyer's signature)

Such written "Notice of Cancellation" may be sent by the consumer to the person to cancel the contract. The 3 day period provided for in this Section does not commence

until the consumer is furnished a "Notice of Cancellation", and the address at which such notice to the seller can be given. If those conditions are met, the seller must return to the consumer the full amount of any payment made or consideration given under the contract or for the merchandise. It is an unlawful practice within the meaning of this Act for any person to

> (a) Fail, before furnishing copies of the "Notice of Cancellation" to the consumer, to complete the copies by entering the name of the person, the address of the person's place of business, the date of the transaction, and the date, not earlier than the third business day following the date of the transaction, by which the consumer may give notice of cancellation;
>
> (b) Include in any contract or receipt under this Section any confession of judgment or any waiver of any of the rights to which the consumer is entitled under this Section including specifically his right to cancel the transaction in accordance with the provisions of this Section;
>
> (c) Fail to inform each consumer orally, at the time he signs the contract or purchases or leases the goods or services, of his right to cancel;
>
> (d) Misrepresent in any manner the consumer's right to cancel;
>
> (e) Use any undue influence, coercion or any other wilful act or representation to interfere with the consumer's exercise of his rights under this Section;
>
> (f) Fail or refuse to honor any valid notice of cancellation by a consumer and within 10 business days after the receipt of such notice, to
>
>> (i) refund all payments made under the contract or sale,
>>
>> (ii) return any goods or property traded in, in substantially as good a condition as when received by the person, or
>>
>> (iii) cancel and return any negotiable instrument executed by the consumer in connection with the contract or transaction and take any action necessary or appropriate to terminate promptly any security interest created in the transaction;
>
> (g) Negotiate, transfer, sell, or assign any note or other evidence of indebtedness to a finance company or other third party prior to midnight of the fifth business day following the day the contract was signed or the goods or services were purchased or leased; or

(h) Fail, within 10 business days of receipt of the consumer's notice of cancellation, to notify him whether the seller intends to repossess or to abandon any shipped or delivered goods.

For the purposes of this Section, the word "sale" includes a sale, lease or rental.

This Section does not apply to any transaction

(a) made pursuant to prior negotiations in the course of a visit by the consumer to a retail business establishment having a fixed permanent location where the goods are exhibited, or the services are offered, for sale or lease on a continuing basis;

(b) in which the consumer is accorded the right of rescission by the provisions of the Consumer Credit Protection Act (15 U.S.C. 1635) or regulations issued pursuant thereto;

(c) in which the consumer has initiated the contact and the goods or services are needed to meet a bona fide immediate personal emergency of the consumer, and the consumer furnishes the person with a separate dated and signed personal statement in the consumer's handwriting describing the situation requiring immediate remedy and expressly acknowledging and waiving the right to cancel the sale within 3 business days;

(d) conducted and consummated entirely by mail or telephone without any other contact between the consumer and the person or its representative prior to delivery of the goods or performance of the services;

(e) in which the consumer has initiated the contact and specifically requested the person to visit his home for the purpose of repairing or performing maintenance upon the consumer's personal property, on the condition that if, in the course of such a visit, the person sells the consumer the right to receive additional services or goods other than replacement parts necessarily used in performing the maintenance or in making the repairs, the sale of those additional goods or services does not fall within this exclusion;

(f) pertaining to the sale or rental of real property, to the sale of insurance or to the sale of securities or commodities by a broker-dealer registered with the Securities and Exchange Commission; or

(g) between a consumer and a loan broker licensed under the Residential Mortgage License Act of 1987 when (i) the transaction involves obtaining a mortgage loan on real estate and (ii) the first contact respecting the transaction is initiated by the consumer or by another person at the request of the consumer.

36. In addition, the transaction was subject to 815 ILCS 505/2, which provides:

§ 2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965,1 in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

37. Plaintiff was damaged by the conduct complained of, in that she:

    a. Purchased an expensive and useless water softener;

    b. Incurred an obligation to finance the purchase without realizing the expense of doing so;

    c. Was aggravated and distressed.

38. Defendants' conduct was malicious and oppressive, in that:

    a. Defendants engaged in a course of deceptive and fraudulent conduct implemented using form documents;

    b. Defendants took advantage of a senior citizen on a fixed income.

### COUNT I -- TRUTH IN LENDING ACT

39. Plaintiff incorporates paragraphs 1-38.

40. This claim is against Absolute House Care, Inc.

41. Absolute House Care, Inc., violated 15 U.S.C. §§1638 and 12 C.F.R. §1026.18 by documenting the financing of the transaction as open-end credit when it had no reasonable expectation of repeated purchases by plaintiff.

42. The improper conduct is a standard practice by Absolute House Care, Inc., carried out via form documents.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against Absolute House Care, Inc., for:

   i. $5,000 statutory damages;

   ii. Attorney's fees, litigation expenses and costs of suit;

   iii. Such other or further relief as is appropriate.

## COUNT II -- ILLINOIS CONSUMER FRAUD ACT

43. Plaintiff incorporates paragraphs 1-38.

44. This claim is against all defendants.

45. Absolute House Care, Inc., violated 815 ILCS 505/2B by:

   a. Installing the water softener one day after plaintiff signed the contract.

   b. Installing the water softener within one day without a bona fide immediate personal emergency of the consumer, as documented in a separate dated and signed personal statement in the consumer's handwriting describing the situation requiring immediate remedy and expressly acknowledging and waiving the right to cancel the sale within 3 business days.

   c. Having plaintiff sign Exhibit D, which purports to impose a cancellation fee if equipment is installed within three business days and the transaction is cancelled. This is in direct violation of the requirement in 815 ILCS 505/2B that cancellation be "WITHOUT ANY PENALTY OR OBLIGATION."

        d.        Misrepresenting in Exhibit D the consumer's right to cancel;

        e.        Using undue influence, coercion or any other wilful act or representation to interfere with the consumer's right to cancel.

46.        Elite Marketing Services, Inc., violated 815 ILCS 505/2B by installing the water softener on the day after plaintiff signed the contract, thereby interfering with plaintiff's right to cancel.

47.        Absolute House Care, Inc. violated 815 ILCS 505/2 by failing to disclose the material fact that purchase of the water softener sold to plaintiff was only appropriate if plaintiff used a high volume of water.

48.        Aqua Finance, Inc., violated 815 ILCS 505/2 by preparing and providing to Absolute House Care, Inc., the documents purporting to create an open-end credit arrangement between Absolute and the consumer.

49.        Connexus is the principal of Aqua for the purpose of originating and servicing the transactions at issue.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for:

        i.        Actual damages;

        ii.        Punitive damages of at least $70,000;

        iii.        Attorney's fees, litigation expenses and costs of suit;

        iv.        Such other or further relief as is appropriate.

## COUNT III -- COMMON LAW FRAUD

50.        Plaintiff incorporates paragraphs 1-38.

51. This claim is against all defendants.

52. Defendants agreed to and did engage in a course of fraudulent conduct, in that:

   a. Absolute House Care, Inc. sold plaintiff an expensive water softener which she did not need;

   b. Absolute deprived plaintiff of her rights under 815 ILCS 505/2B;

   c. Defendants induced plaintiff to agree to the financing of the water softener without being furnished closed-end credit disclosures, as a result of which plaintiff did not realize the total cost of the credit;

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for:

   i. Actual damages;

   ii. Punitive damages of at least $70,000;

   iii. Attorney's fees, litigation expenses and costs of suit;

   iv. Such other or further relief as is appropriate.

*/s/Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
Tara L. Goodwin
Mary Frances Charlton
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824

(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

## **JURY DEMAND**

Plaintiff demands trial by jury.

>*/s/Daniel A. Edelman*
>Daniel A. Edelman

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

>*/s/Daniel A. Edelman*
>Daniel A. Edelman